UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SERPENTEC, INC. F/K/A MARMON RETAIL ELECTRICAL PRODUCTS, INC., <br><br> Plaintiff, <br><br> -vs- <br><br> WEEMS INDUSTRIES, INC., <br><br> Defendants. | Case No. 1:18-cv-07146 |

## COMPLAINT

Plaintiff Serpentec, Inc. f/k/a Marmon Retail Electrical Products, Inc. ("Serpentec" or "Plaintiff"), for its Complaint against Weems Industries, Inc. ("Defendant"), alleges as follows:

### INTRODUCTION

1. This is an action for a declaratory judgment that Defendant has unlawfully terminated the parties' November 4, 2016 Trademark License Agreement (the "Agreement"), that the Agreement remains in full force and effect, and, accordingly, that Serpentec (i) does not infringe any trademark right of Defendant by selling products under the licensed trademarks, and (ii) remains the exclusive licensee and only authorized provider of electrical cord products under the Agreement. Serpentec also brings claims for tortious interference to prevent Defendant from continuing to improperly and unjustifiably interfere with its customer and manufacturing partner relationships.

1

## PARTIES

2. Serpentec, Inc. is a corporation organized and existing under the laws of the state of Delaware with its principal place of business in Niles, Illinois. Until August 31, 2018, Serpentec, Inc. was known as Marmon Retail Electrical Products, Inc.

3. Weems Industries, Inc. is a corporation organized and existing under the laws of the state of Iowa with its principal place of business in Marion, Iowa.

## JURISDICTION AND VENUE

4. The exercise of personal jurisdiction over Defendant comports with Illinois law and with the constitutional requirements of due process because Defendant has purposefully directed its activities towards Illinois residents, including by selling and offering its products for sale in Illinois. Defendant also expressly agreed to the exclusive jurisdiction of this Court when it signed the Agreement, which provides that "[a]ll disputes and litigation regarding this Agreement, its construction and matters connected with its performance shall be subject to the exclusive jurisdiction of the state and federal courts of the State of Illinois. The parties hereby waive any challenge to the jurisdiction or venue of the Court over these matters."

5. This Court has jurisdiction over Serpentec's claims for a declaratory judgment of non-infringement pursuant to 28 U.S.C. §§ 2201(a), §§ 1331 and 1338(a) and 15 U.S.C. § 1121(a) because there is an actual controversy between the parties for which Serpentec seeks declaratory relief regarding the parties' respective rights arising under the Lanham Act. This Court has supplemental jurisdiction over Serpentec's remaining claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Serpentec's claim arising under the Lanham Act that they form part of the same case or controversy under Article III of the United States Constitution.

6. This Court also has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332(a)(1) and (a)(3) because there is complete diversity of citizenship among the parties and the matter in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred and continue to occur in this District, and because Defendant is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

**A.     The Parties and Their Trademark License Agreement.**

8. Serpentec is a leading provider of premium quality extension, generator and multi-outlet cords. Serpentec manufactures and distributes its products through various channels, including through relationships with major hardware, home-improvement and construction retailers.

9. Defendant sells tools and equipment for professional and consumer use, including hoses, flexible extensions and couplers, and related products. Defendant also licenses its trademarks to third parties to manufacture, develop and sell other products.

10. Defendant owns numerous federal trademark registrations for FLEXZILLA, including in connection with electrical extension cords, air compressors, compressed air hoses, water hoses, grease guns, grease gun accessories, and work gloves and gardening gloves.

11. Defendant does not manufacture all products sold to U.S. and Canadian consumers under the trademark FLEXZILLA. Instead, Defendant licenses its FLEXZILLA trademarks to third-parties, who manufacture, distribute, and sell products bearing those marks. Serpentec is one such third-party.

12. Among Defendant's federal trademark registrations for FLEXZILLA is United States Trademark Registration No. 4,752,627 in connection with electrical extension cords. Defendant also claims common law trademark rights in the term ZILLAGREEN and in the color ZILLA Green in Pantone 389C in connection with electrical extension cords. These claimed common law trademarks, together with U.S. Reg. No. 4,752,627, are hereinafter referred to as the "ZILLA Marks."

13. On November 4, 2016, the parties entered into the Agreement attached hereto as **Exhibit A** setting forth the parties' rights and obligations concerning use of the ZILLA Marks in connection with electrical cords.

14. The Agreement has an initial term of five years from the effective date. Thus—absent proper termination—the earliest the Agreement could expire is November 4, 2021.

15. Under the Agreement, Serpentec has the exclusive right to use the ZILLA Marks in connection with the manufacture, distribution, and sale of electrical extension cords in the United States and Canada. (*See* §§ 1–2, Ex. A). Having granted Serpentec the exclusive right to use the ZILLA Marks in connection with electrical extension cords, Defendant has no authority to make or sell electrical extension cords using the ZILLA Marks.

16. Pursuant to the Agreement, Serpentec sells electrical extension cord products of various lengths and gages under the ZILLA Marks. These products are collectively referred to herein as the "Flexzilla Pro Extension Cord." One example of the Flexzilla Pro Extension Cord is depicted below.



17.     In exchange for its license to use the ZILLA Marks, and pursuant to Section 4 of the Agreement, Serpentec pays Defendant a royalty of five percent of net sales of the Flexzilla Pro Extension Cord.  Serpentec has since the effective date of the Agreement paid Defendant all royalties due to Defendant under the Agreement.

18.     The Agreement has proved lucrative for the parties.  To date, Serpentec has sold over 120,000 units of the Flexzilla Pro Extension Cord each year of the Agreement, and has paid more than $450,000 in royalties to Defendant under the Agreement.  Serpentec's sales of the Flexzilla Pro Extension Cord, and therefore the amount of royalties received by Defendant, is projected to grow again for the year 2019.

**B.     Defendant's Unlawful and Ineffective Termination of the Agreement.**

19.     Upon information and belief, in or around early 2018, Defendant became dissatisfied with the bargain it struck with Serpentec.  At that time, Defendant set out to terminate the Agreement so that it could manufacture, distribute, and sell its own electrical

5

extension cords under the ZILLA Marks, and directly reap all of the profits derived from those sales.

20. On July 17, 2018, Defendant sent Serpentec the Notice of Termination of Trademark License Agreement attached hereto as **Exhibit B** (the "Notice") and stated the following:

> All of your rights to use the Trademarks under the License Agreement are hereby terminated as of the Effective Date. No further display or distribution of marketing or advertising materials incorporating the Trademarks shall be used, and no product or service on, or in connection with which, the Trademarks are used may be produced or provided.

21. In the Notice, Defendant asserted that Serpentec breached Sections 2(c), 5(a) and 5(b) of the Agreement, and that Defendant was terminating the Agreement pursuant to Section 12(c).

22. Section 2(c) of the Agreement states that "Licensee agrees not to use the Trademarks in a manner that will genericize, dilute or otherwise damage the Trademarks and/or the goodwill associated therewith."

23. Section 5(a) of the Agreement states:

> The quality of the Licensed Products shall be at least as high as the quality of similar products with an equivalent price point that are shipped, distributed, sold or used by Licensee in the Territory as of the date of the Agreement, and shall be in full conformance with laws and regulations.

24. Section 5(b) of the Agreement states:

> Prior to commercial production of any Licensed Product and any packaging, advertising or marketing materials therefor, Licensee will submit to Licensor for Licensor's review and written approval, said approval not to be unreasonable withheld: (i) a pre-production sample of each type of Licensed Product on or in connection with which the Trademarks will be displayed and (ii) a mock-up of any packaging, advertising or marketing material to be used in conjunction with the Licensed Products. If Licensor determines that a Licensed Product or representation of an Trademark on a mock-up of packaging, advertising or marketing material does not meet with its approval, ***Licensor will notify Licensee***

6

> ***in writing of the specific items to which it objects and proposed cures***, and Licensee will correct such items to Licensor's satisfaction. ***Licensor's objections to, and proposed cures for, a Licensed Product, or use of Trademarks on any packaging, advertising or marketing materials therefor, must be reasonable, economical and conform to the local business practices for the Licensed Product, and its packaging, advertising and marketing materials. If Licensor does not provide approval or disapproval with the objections within ten (10) business days of receipt of the pre-production samples, the sample or the mock-up will be deemed approved.*** The parties agree that they will work together to provide time approvals.

(emphasis added).

25. Section 5(c) sets forth the procedure for determining whether Serpentec complied with the quality controls set forth in the Agreement. Defendant failed to include any reference to Section 5(c) in its Termination Notice, nor did it comply with this Section to determine whether Serpentec "compl[ied] with the Agreement and quality controls set forth herein." Section 5(c) states:

> To determine whether Licensee is complying with this Agreement and the quality controls set forth herein, Licensor shall have the right, upon giving reasonable notice to Licensee, (i) to request a reasonable number of samples of each of the Licensed Products; (ii) to request a reasonable number of specimens of use of the Trademarks; or (iii) to receive copies of quality assurance materials or reports used by Licensee to test any products that it sells under the Trademarks. Licensee agrees to cooperate fully with Licensor and will promptly supply Licensor with samples of Licensed Products, specimens of use of the Trademarks and quality assurance materials related to any product sold under the Trademarks.

26. The Agreement also expressly sets forth provisions and procedures for terminating the Agreement. Defendant's Notice alleges that it terminated the Agreement pursuant to Section 12(c)(i). That section states:

> ***If Licensee commits a breach of any provision of this Agreement and such breach is not cured within a period of thirty (30) days after written notice of such breach is provided to Licensee***, then Licensor may immediately terminate this Agreement at any time thereafter. If a breach is incapable of cure, then, without prejudice to any rights to damages or compensation under the law, Licensor shall have the right to terminate this Agreement by written notice of such termination.

7

(emphasis added)

27. Defendant's attempt to terminate the Agreement completely fails to comply with the express termination provisions set forth in the Agreement. Defendant simply copied certain provisions from the Agreement and, without any evidence or further information in support of the same, asserted that Serpentec had breached the Agreement.

28. Each alleged breach identified by Defendant is set forth in the table below, showing the provision Defendant identified as being breached, and whether Defendant offered any opportunity for curing the breach:

| PROVISION ALLEGEDLY BREACHED ACCORDING TO TERMINATION NOTICE | SPECIFIC OBJECTIONS | PROPOSED CURE |
|---|---|---|
| Sec. 2(c): "[U]se of the Trademarks . . . that are below the quality required, and in a manner that damages the Trademarks and the goodwill associated with the Trademarks." | None | None |
| Sec. 5(a): "[F]ailure to maintain the quality of the Licensed Products." | None | None |
| Sec. 5(b): "[F]ailure to promptly supply Licensor with samples of Licensed Products, specimens of use of the Trademarks and quality assurance materials." | None | None |
| Sec. 5(b): "[P]roceeding with the commercial production of Licensed Products without first obtaining Licensor's written approval." | None | None |

29. Defendant did not provide Serpentec with proper notice or an opportunity to cure any alleged breach of the Agreement. Indeed, the Notice did not provide sufficient information regarding the purported breaches to allow Serpentec to even understand—let alone cure—those purported breaches.

30. The Notice fails to specify how Serpentec used the ZILLA Marks in a manner that genericized, diluted, or otherwise damaged them or their associated goodwill, or how the quality

of Serpentec's products deteriorated such that they no longer meet the standard of quality set forth in the Agreement. The Notice also fails to address Defendant's pre-production approval obligations under Section 5(b) of the Agreement, and fails to identify when, precisely, it requested product samples, trademark specimens, or quality assurance materials for purposes of evaluating Serpentec's compliance with quality controls.

31. Defendant also did not characterize the alleged breaches described in the Notice as "incapable of cure," and none of those alleged breaches are, in fact, incapable of cure.

32. Serpentec has since July attempted to resolve this matter short of litigation. Serpentec communicated to Defendant that its Notice was both inadequate under the Agreement and factually incorrect with respect to its assertions. In response to Serpentec, Defendant again attempted to identify instances of breach in a letter dated August 8, 2018 and attached as **Exhibit C** (the "Response Letter").

33. The Response Letter failed to identify any specific objections or any proposed cures as required by the Agreement. The Response Letter further failed to identify any provision or section of the Agreement purportedly breached by Serpentec.

34. Instead, the Response Letter refers to acts and conduct having no bearing on the Agreement. For instance, the Response Letter contended that Serpentec's decision to move manufacturing from Indiana to Asia constitutes a breach of the Agreement even though the Agreement contains no provision requiring manufacturing to occur in any particular location.

35. The parties have reached an impasse, and upon information and belief, Defendant plans to commence sales of Defendant's own product under the ZILLA Marks beginning in November 2018.

36. Serpentec also recently learned that Defendant has contacted a major retailer to which Serpentec distributes the Flexzilla Pro Extension Cord product. Upon information and belief, Defendant's contact with the retailer has been for the purpose of interfering with Serpentec's business relationship with the retailer and with its ability to continue to distribute the Flexzilla Pro Extension Cord to the retailer.

37. In addition, Defendant has contacted Serpentec's manufacturing partner in Taiwan. Upon information and belief, Defendant improperly and unlawfully told Serpentec's manufacturing partner that the Agreement between Serpentec and Defendant had ended, and Defendant sought additional information about Serpentec's recent orders from its partner. Defendant's contact with Serpentec's Taiwanese manufacturing partner was for the purpose of interfering with Serpentec's business relationship with its Taiwanese partner and with its ability to continue to source the Flexzilla Pro Extension Cord from its Taiwanese partner.

38. Accordingly, Serpentec brings this lawsuit to halt Defendant's unlawful termination of the Agreement, to confirm that Defendant's sale of the Flexzilla Pro Extension Cord does not infringe any trademark or other right of Defendant, and to prevent further, unlawful interference with Serpentec's business relationships.

## COUNT ONE
**(Declaratory Judgment of Unlawful Termination)**

39. Serpentec incorporates the foregoing paragraphs as if fully stated herein.

40. The dispute created by Defendant's unlawful Notice of Termination of the Agreement is an actual, substantial, and justiciable controversy between the parties requiring resolution by the Court.

41. Serpentec has fulfilled all of its obligations under the Agreement.

42. Defendant unlawfully terminated the Agreement.

43. Serpentec seeks a declaratory judgment that Defendant unlawfully terminated the Agreement, and that, accordingly, the Agreement is not terminated and remains in full force and effect. Serpentec seeks a further declaration that it remains the exclusive licensee of the ZILLA Marks such that it is the only authorized provider of electrical extension cord products using those marks.

44. Serpentec will suffer irreparable harm absent preliminary and permanent injunctive relief preventing Defendant from unlawfully terminating the Agreement prior to its expiration on November 4, 2021 and preventing Defendant from selling any electrical extension cord product under the ZILLA Marks any time before November 4, 2021.

## COUNT TWO
### (Declaratory Judgment of Non-Infringement of U.S. Trademark Reg. No. 4,752,627)

45. Serpentec incorporates the foregoing paragraphs as if fully stated herein.

46. Under the Agreement, Serpentec has the exclusive right to use the ZILLA Marks in connection with the manufacture, distribution, and sale of electrical extension cords.

47. The dispute created by Defendant's unlawful notice of termination of the Agreement—including Defendant's statement that "[a]ll of [Serpentec's] rights to use the Trademarks under the License Agreement are hereby terminated" and that "[n]o further display or distribution of marketing or advertising materials incorporating the Trademarks shall be used, and no product or service on, or in connection with which, the Trademarks are used may be produced or provided"—is an actual, substantial, and justiciable controversy between the parties requiring resolution by the Court.

48. Serpentec seeks a declaratory judgment that it does not infringe U.S. Trademark Registration No. 4,752,627 for FLEXZILLA.

## COUNT THREE
### (Declaration of Non-Infringement of Common Law Trademarks)

49.     Serpentec incorporates the foregoing paragraphs as if fully stated herein.

50.     Under the Agreement, Serpentec has the exclusive right to use the ZILLA Marks in connection with the manufacture, distribution, and sale of electrical extension cords.

51.     The dispute created by Defendant's unlawful notice of termination of the Agreement—including Defendant's statement that "[a]ll of [Serpentec's] rights to use the Trademarks under the License Agreement are hereby terminated" and that "[n]o further display or distribution of marketing or advertising materials incorporating the Trademarks shall be used, and no product or service on, or in connection with which, the Trademarks are used may be produced or provided"—is an actual, substantial, and justiciable controversy between the parties requiring resolution by the Court.

52.     Serpentec seeks a declaratory judgment that it does not infringe Defendant's common law trademark rights.

## COUNT FOUR
### (Tortious Interference with Prospective Advantage)

53.     Serpentec incorporates the foregoing paragraphs as if fully stated herein.

54.     Serpentec has strong, long-term relationships with its customers, including major retailers, and with its manufacturing partners, including its Taiwanese manufacturing partner that makes the Flexzilla Pro Extension Cord.

55.     Serpentec has a reasonable expectation that its business relationships with its customers and manufacturing partners will continue, that Serpentec will continue to distribute its products, including the Flexzilla Pro Extension Cord, to those customers, and that Serpentec will continue to source its products, including the Flexzilla Pro Extension Cord, from its Taiwanese manufacturing partner.

56. Defendant has knowledge of Serpentec's expected continued relationships with its customers and manufacturing partners, but, upon information and belief, nevertheless intentionally, improperly, and without any justification interfered with Serpentec's prospective economic advantage with these customers and manufacturing partners.

57. As a direct and proximate result of Defendant's conduct alleged herein, Serpentec has suffered damages in excess of $75,000 to be specifically determined at trial.

58. Defendant will not stop interfering with Serpentec's customer and manufacturing partner relationships unless the court preliminarily and permanently enjoins Defendant's unlawful acts, and Serpentec will suffer irreparable harm absent injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Serpentec, Inc. respectfully requests that the Court:

(a) Declare that Defendant unlawfully terminated the parties' November 4, 2016 Trademark License Agreement and that, accordingly, the Agreement is not terminated and remains in full force and effect;

(b) Declare that Serpentec's sale of the Flexzilla Pro Extension Cord product does not violate any of Defendant's trademark rights, whether under the Lanham Act or state law;

(c) Preliminarily and permanently enjoin Defendant from unlawfully terminating the Agreement prior to its expiration on November 4, 2021;

(d) Preliminarily and permanently enjoin Defendant from selling any electrical extension cord product under the ZILLA Marks at any time before November 4, 2021 or proper termination of the Agreement;

(e) Order that Defendant notify in writing Serpentec's customers and manufacturing partners that the Agreement has been, and remains, in full force and effect;

(f) Order that Defendant pay to Serpentec an amount of damages in excess of $75,000 to be specifically determined at trial;

(g) Order that Defendant reimburse Serpentec for its attorneys' fees and costs and disbursements in bringing this action; and

(h) Order such other relief and damages as the Court may deem just and proper.

## JURY DEMAND

Plaintiff Serpentec, Inc. hereby demands a trial by jury on all issues so triable.

Date: October 25, 2018                **FAEGRE BAKER DANIELS LLP**

/s/ *Daniel J. Schwartz*
James J. Saul
Daniel J. Schwartz
Kathryn A. Feiereisel
FAEGRE BAKER DANIELS LLP
311 S. Wacker Drive, Suite 4300
Chicago, IL  60606
Telephone:  (312) 212 6500
Facsimile:   (312) 212 6501
james.saul@FaegreBD.com
daniel.schwartz@faegrebd.com
katie.feiereisel@faegreBD.com

*Attorneys for Plaintiff Serpentec, Inc.*